UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BROCK BOWLING, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 10-174-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| OSCAR GAYLE HOUSE, | ) | **ORDER** |
| | ) | |
| Respondent. | ) | |

***** ***** ***** *****

On June 25, 2010, Brock Bowling filed a petition for the writ of habeas corpus, claiming that the Commonwealth of Kentucky convicted him on insufficient evidence and that retrial would violate his rights under the Double Jeopardy Clause of the Fifth Amendment. Magistrate Judge Candace J. Smith considered the matter and issued a thorough Report and Recommendation ("R&R") advising that the Court deny Bowling's petition, to which Bowling objected. Judge Smith is right. The petition should be denied.

**BACKGROUND**

In her R&R, Judge Smith describes the facts of the case in detail. *See* R. 20 at 2-4. The following background is drawn from her summary:

Drug dealer Jimmy Mills was no stranger to violence. Before his own death, Mills shot and wounded David Hoskins in Clay County, Kentucky, then fled to Mexico for two weeks with his girlfriend, Angela Fox. Upon his return to the United States, police arrested Mills at the Atlanta airport and took him back to Kentucky,

where he was charged. Mills posted bond to secure his release, at which point he returned to his home in Clay County and spent the night with his wife Donna.

The next day, according to Donna, Jimmy planned to meet his attorney in London at 2:00 p.m. and then drive to Cincinnati, where airport authorities were holding the luggage from his Mexico trip. He told Donna that he wanted Brock Bowling to go with him on the trip. Before Jimmy left, Donna recalled that he said he was heading to Brock's house, and added "I think they've robbed me." Donna also remembered Jimmy left at 7:45 a.m. wearing sweatpants, which she took as a sign he intended to return home before meeting his attorney in London.

Jimmy did not return home. The next day, Donna Mills's cousin found Jimmy's body at the bottom of a ravine in Big Double Creek Park. Jimmy had been shot three times and his body was wrapped in a tablecloth and covered with a garbage bag. When the police arrived, they also found an area rug nearby. The officers concluded that the body had been wrapped in the rug, which came loose as it rolled down the ravine. The police had few leads to go on; DNA evidence from the scene matched only Donna Mills and Jimmy himself. But one witness testified that the area rug looked "similar" to one owned by Dennis Bowling, Brock's brother.

Five days later, Dennis Bowling's trailer caught fire at four o'clock in the morning. Brock Bowling was present at the trailer, fully dressed, but because the trailer was not insured, the fire department did not conduct an arson investigation.

A month later, two horseback riders discovered Jimmy Mills's vehicle at the top of an abandoned ATV trail near the Clay County-Ulysses County line. Neither fingerprints nor trace samples of hair and fabric matched any of the police's suspects,

but one witness, Ronald Collins, said he had seen Brock Bowling walking near the Clay County-Ulysses County line on the morning that Jimmy Mills's body was found.

The investigation then stalled for six months, until police interrogated Christine Gibson. At trial, she testified that she and her husband saw Brock Bowling, Shannon Finley, and Timothy Finley in a pick-up truck at the Double Creek Park entrance at 3:00 a.m. on the day Mills's body was found. The Gibsons followed the truck into the park so Christine could use the restroom. As she exited her vehicle, Christine said she got a closer look at the pick-up truck and saw there was an area rug rolled up in the back of the truck, with something inside the rug. J.C. Gibson corroborated her testimony and added that Brock Bowling and Timothy Finley asked him the next day whether "the law" had been in the park that morning. The Gibsons disagreed, however, on who had been driving their vehicle that night—Christine said it was J.C., while J.C. said it was Christine—and both admitted to using cocaine and other prescription drugs earlier that day.

Two months later, a Clay County grand jury indicted eight individuals for their involvement with Mills's death: Brock Bowling, Dennis Bowling, Timothy Finley, Shannon Finley, Angela Fox, Shane Wagers, Joseph Collins, and J.C. Gibson. Collins and Wagers pled guilty to conspiracy to commit arson and tampering with evidence, while prosecutors dismissed the charges against Gibson and Fox in exchange for their testimony.

The remaining defendants, Brock Bowling, Dennis Bowling, Timothy Finley, and Shannon Finley, were tried jointly. At the close of evidence, Dennis Bowling moved for a directed verdict of acquittal, which the court granted. As for Brock

Bowling and the Finleys, the prosecutor requested and the judge delivered two sets of instructions to the jury. The first set informed the jury that it could convict Bowling on either a principal or accomplice theory of liability (the "individual" instructions), and the second set stated that it could convict him of a combination of the two theories without specifying one (the "combination" instructions). The jury found Bowling guilty on the combination instructions, but was silent on the individual instructions. In January 2006, Bowling was sentenced to twenty years in prison for murder and one year for evidence tampering, to be served concurrently.

**DISCUSSION**

**I. Procedural Posture**

Bowling and his codefendants appealed their convictions to the Kentucky Supreme Court, arguing, among other things, that there was insufficient evidence to support their convictions and that the trial court gave the jury erroneous instructions. That court found the evidence was sufficient to support the conviction of Bowling under the principal theory, but not sufficient to support the convictions of Bowling's codefendants. Bowling could not be an accomplice to a murder without a principal, so there was also insufficient evidence for the accomplice theory. As a result, the Kentucky Supreme Court concluded that the trial court erred in giving the combined instructions to the jury, because these instructions required sufficient evidence of guilt under both the principal and accomplice theories. The court then reversed Bowling's conviction and remanded it for a new trial on the principal theory of liability.

On remand, Bowling moved to dismiss the new indictment, arguing that the Double Jeopardy Clause prohibited his retrial on the murder charge. The trial court

denied the motion, and, before his retrial, Bowling filed a writ of prohibition with the Kentucky Court of Appeals on the same grounds. That court denied the writ, and the Kentucky Supreme Court affirmed the denial in September 2009. As Magistrate Judge Smith noted in her R&R, R. 20 at 5 n.4, this denial exhausted Bowling's state court remedies and opened the door for his federal habeas claim.

Bowling filed his claim under 28 U.S.C. § 2254, but this statute applies only to individuals "in custody pursuant to the judgment of a State court." A petitioner, who, like Bowling, is free on bond pending a new trial is "in custody," *see Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300-01 (1984), but not pursuant to a state court judgment. Bowling therefore cannot bring a § 2254 petition. Rather, the Sixth Circuit has established that 28 U.S.C. § 2241 is the proper vehicle for the habeas claims of defendants who are out on bond awaiting trial. *See Klein v. Leis*, 548 F.3d 425, 430 n.4 (6th Cir. 2008); *Atkins v. Michigan*, 644 F.2d 543, 546 n.1 (6th Cir. 1981). Judge Smith properly construed Bowling's petition as filed under § 2241. *See Fisher v. Rose*, 757 F.2d 789, 792 n.2 (6th Cir. 1985) (treating petition brought under § 2254 as seeking relief pursuant to § 2241).

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires, among other things, that federal courts give deference to state court judgments when considering habeas petitions. As was the case in *Klein*, neither party here argues that AEDPA should not control. *See Klein*, 548 F.3d at 430 n.4 (citing *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008) (applying AEDPA to petitioner's pretrial § 2254 petition that the court construed as a § 2241 petition)); *see also Johnson v. Karnes*,

198 F.3d 589, 593 (6th Cir. 1999); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997) (applying AEDPA to pretrial Double Jeopardy habeas claims).

Courts only grant habeas petitions under AEDPA if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). State court decisions are contrary to clearly established federal law only if they apply a rule that contradicts Supreme Court holdings, or confront a set of facts "materially indistinguishable" from a Supreme Court decision and reach a different result. *Bray v. Andrews*, 640 F.3d 731, 737(6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413-14). Similarly, a state court decision is an unreasonable application of federal law only if it applies a governing legal rule "unreasonably" to the facts of a case or if it "unreasonably extends" a principle from Supreme Court precedent to a new context. *Id*. at 738 (quoting *Williams*, 529 U.S. at 413).

**III. Sufficiency of the Evidence**

Bowling claims that the prosecution did not present sufficient evidence to convict him of any theory of murder. If Bowling is correct, the "trial court should have entered a judgment of acquittal" rather than submit his case to the jury. *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988). A judge's directed acquittal is no different from a jury acquittal, so the Double Jeopardy Clause prevents a state from retrying a defendant whose conviction is reversed because of insufficient evidence. *See Patterson v. Haskins*, 470 F.3d 645, 651-52 (6th Cir. 2006). Therefore, if Bowling is successful, Kentucky cannot retry him.

Because AEDPA applies, this Court's review is limited to whether the Kentucky Supreme Court acted contrary to clearly established federal law when it denied Bowling's sufficiency of the evidence claim. It did not. Federal law holds that evidence is sufficient to support a criminal conviction when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Bowling can therefore only be successful if the Kentucky Supreme Court "unreasonably applied the *Jackson* standard" to his claim. *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).

A two-step analysis determines whether the Kentucky Supreme Court acted unreasonably: if there was sufficient evidence to support the conviction, the federal court's inquiry ends; if not, the federal court must, ask whether the state court was objectively unreasonable in concluding a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id*. This analysis requires "deference at two levels"—the federal court must defer to the jury's verdict, and then again to the state court's appellate review of that verdict. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). Finally, in this review, any factual findings the state court made are "presumed correct" and can only be rebutted by clear and convincing evidence. *Tinsley v. Million*, 399 F.3d 796, 801-02 (citing 28 U.S.C. § 2254(e)(1)).

Sufficient evidence supports Bowling's conviction for murder. In Kentucky, the essential elements of murder are that the defendant intentionally acted to cause the death of another in order. Ky. Rev. Stat. § 507.020(1)(a). Bowling argues the Kentucky Supreme Court relied on the testimony of Angela Fox—who did not appear

before the jury—to establish that Bowling and Jimmy Mills were involved in the same drug trafficking ring and that Jimmy kept his drug profits at Bowling's house. But Donna Mills testified that when Jimmy left the house on the morning of his death, he said he was going to visit Brock Bowling, and that Jimmy thought he had been robbed. Donna's testimony, when viewed in the light most favorable to the prosecution, could have allowed the jury to reach the inferences identical to Fox's testimony: Jimmy and Brock were involved in dealing drugs and had a dispute over money.

Bowling also argues that the prosecution presented no evidence that Mills actually did visit Bowling, R. 22 at 4-5, but the *Jackson* standard does not require proof or corroboration. A rational juror, viewing the evidence in the light most favorable to the prosecution, could infer that Jimmy Mills did in fact visit Bowling that morning. The juror could therefore conclude that the two were together immediately before the murder. Moreover, other strong circumstantial evidence linked Bowling to the murder. Christine Gibson testified that Bowling attempted to conceal Mills's body, and another witness placed Bowling near the location of Mills's body on the day it was discovered. Finally, Mills was shot three times at close range. A jury could easily infer from this fact that the murder was intentional.

The evidence against Bowling was largely circumstantial, but it was sufficient to convict. *See United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) ("[c]ircumstanial evidence alone is sufficient to sustain a conviction"); *see also United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007) ("We afford the same weight to both circumstantial and direct evidence."). If a jury drew all reasonable

inferences in favor of the prosecution, it would find that Bowling was with Mills on the day of his murder, that Bowling had a motive to kill Mills, and that Bowling attempted to conceal evidence of the crime after the fact. Combined, this evidence could allow a rational tier of fact to find the essential elements of murder beyond a reasonable doubt. This Court's inquiry therefore ends, *see Stewart*, 595 F.3d at 653, and there is no need to question whether it was reasonable for the Kentucky Supreme Court to conclude the evidence was sufficient.

**IV. Double Jeopardy**

Bowling's second claim is that the Kentucky Supreme Court acted contrary to clearly established federal law when it denied his writ of prohibition and allowed the state to try him again. He argues that the trial judge's individual instructions gave the jury the chance to convict him of principal liability, so its silence under the individual instructions was tantamount to an implied acquittal. By this logic, his retrial would violate the Double Jeopardy Clause of the Fifth Amendment. *See* R. 1-2 at 8.

Bowling is wrong. The Kentucky Supreme Court's decision to allow a second trial was not an unreasonable application of federal law. The Double Jeopardy Clause only bars the government from retrying a defendant after some event, that is, an acquittal, "terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984). Bowling can show his jeopardy terminated in one of two ways: by an acquittal by the jury or by a reversal due to insufficient evidence. A reversal because of trial error, by contrast, does not terminate jeopardy. *See Burks v. United States*, 437 U.S. 1, 15-16 (1978). The Kentucky Supreme Court reversed Bowling's trial because of defective jury instructions, which "plainly fall" into the category of

trial error. *Groseclose v. Bell*, 130 F.3d 1161, 1171 (6th Cir. 1997). As a result, reversal did not end Bowling's jeopardy.

An implied acquittal also did not end Bowling's original jeopardy. A jury impliedly acquits a defendant when it has the opportunity to reach a verdict on a charge and instead remains silent. The case of *Green v. United States*, 355 U.S. 184 (1957), provides a helpful illustration. In *Green*, the trial court instructed the jury that it could convict the defendant of either first or second degree murder. Because under the jurisdiction's laws, second degree murder was included within first degree, Green could not be guilty of both first and second degree murder—only one of the two. The jury found the defendant guilty of second degree murder, but said nothing about first degree. Because the jury declined to speak after the court gave it "a full opportunity to return a verdict" of first degree murder, the defendant's jeopardy ended for that offense and he could not be retried for it. *Id.* at 190-91.

Unlike the jury in *Green*, the jury that convicted Bowling did not embrace one theory of the crime at the expense of the other. Rather, the jury convicted Bowling on instructions that encompassed both principal and accomplice liability for murder, giving no answer as to which theory it embraced *Cf. United States v. Garcia*, 938 F.2d 12, 14-15 (2d Cir. 1991) (finding no implicit acquittal occurred when a jury convicted a defendant on combination instructions without adopting a particular theory). Bowling himself concedes that "[i]t is impossible to say . . . what the jury intended by finding all three defendants guilty as either principals or accomplices." R. 1-2 at 15. If the jury had embraced one theory over the other—finding Bowling guilty as an accomplice, but not as a principal, for instance—it would have implied an

acquittal on the other theory. But it did not. Without knowing which theory the jury adopted, its silence on the individual theories signifies nothing. As the Kentucky Supreme Court and Judge Smith correctly concluded, the jury did not reach an implied acquittal of Bowling on principal liability for murder.

Bowling nevertheless argues that his case is analogous to *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988) because "[h]ere the Commonwealth deliberately invited the inconclusive result" by requesting both individual and combination jury instructions. R. 22 at 13. But the facts of *Saylor* are very different from Bowling's circumstances. *See also United States v. Davis*, 873 F.2d 900, 906 (6th Cir. 1989) (recognizing that the holding of *Saylor* is "limited by the unusual situation we were addressing in that case."). The defendant in *Saylor* was charged with two separate offenses and the prosecutor neglected to propose a jury instruction on one of them. Because the trial judge did not instruct the jury on that offense, the Sixth Circuit concluded jeopardy terminated and the defendant could not be retried.

By contrast, the prosecutor's error in this case was to submit confusing instructions on the murder charge, rather than no instructions. Bowling was charged with one offense, murder, of which he was convicted. The ambiguity in the jury's verdict stems from the uncertainty as to which theory the jury used to convict Bowling, not whether he was convicted at all. *Saylor* is therefore inapplicable here. Because Bowling's original jeopardy did not end, the Kentucky Supreme Court did not act contrary to federal law when it rejected Bowling's Double Jeopardy claim.

## CERTIFICATE OF APPEALABILITY

Bowling requires a Certificate of Appealability (COA) before he can seek appellate review of his petition. A district court will issue a COA only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When the district court has denied a petitioner's claims on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claim . . . debatable or wrong." *Miller-Ell v. Cockrell*, 537 U.S. 322, 338 (2003). Judge Smith recommends the Court not issue a COA because jurists of reason would not find it debatable that Bowling's habeas claim does not state a valid claim of the denial of a constitutional right. R. 20 at17-18. This Court agrees.

## CONCLUSION

Accordingly, it is **ORDERED** that the petitioner's objections are **OVERRULED** and Judge Smith's report and recommended disposition, R. 20, is **ADOPTED**. Petitioner's writ of habeas corpus is construed as a petition brought under 28 U.S.C. § 2241 and is **DENIED**. A Certificate of Appealability is **DENIED** and this action shall be **STRICKEN** from the active docket of the clerk.

This the 13th day of September, 2011.




**Signed By:**
***Amul R. Thapar*** AT
**United States District Judge**